```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/29/2023
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TD BANK, N.A.,

                          Plaintiff,                    **18 Civ. 10608 (VM)**

              - against -                               **DECISION AND ORDER**

BARBARA MILLER,

                          Defendant.

**VICTOR MARRERO, United States District Judge.**

This case returns to this Court for consideration following remand by the Second Circuit. Plaintiff TD Bank, N.A. ("TD Bank" or the "Bank") filed a motion for summary judgment against defendant Barbara Miller ("Barbara Miller" or "Miller"), seeking to collect a debt pursuant to a Guaranty of Payment (the "Guaranty") signed by Barbara Miller's late husband, Michael Miller. (See "Motion," Dkt. No. 24.) The Court granted the Motion, in part, finding that under New Jersey Statutes Title 17, Section 16I-7 ("Section 16I-7"), N.J. Stat. Ann. § 17:16I-7, TD Bank was able to reach into the Millers' joint bank accounts to collect its debt. See TD Bank, N.A. v. Miller, No. 18 Civ. 10608, 2020 WL 5441323 (S.D.N.Y. Sept. 9, 2020) (VM) ("Summary Judgment D&O").

Miller appealed the Summary Judgment D&O, arguing that the Court erred in granting summary judgment to TD Bank based on a ground that it did not address in its Motion and without

1

providing the parties notice or an opportunity to be heard. The Second Circuit agreed and remanded the case for reconsideration. Pending before the Court is TD Bank's brief on the remaining issues following remand, which the Court construes as TD Bank's second motion ("Second Motion") for summary judgment. (See "Remand Brief," Dkt. No. 74.) For the reasons stated below, the Court **DENIES** TD Bank's Second Motion and **VACATES**, in part, the Court's Summary Judgment D&O, 2020 WL 5441323.

## I. BACKGROUND

A. FACTUAL BACKGROUND[1]

The Court assumes the parties' familiarity with the underlying facts as discussed in the Court's prior Decision and Order in this case, see Summary Judgment D&O, 2020 WL 5441323, and will discuss only those facts relevant to the Second Motion currently before this Court.

TD Bank contends that it is entitled to recover $1,847,304.63 pursuant to the Guaranty, which Michael Miller executed in 2014. (See "Guaranty," Dkt. No. 24-6.) According to the terms of the Guaranty, Michael Miller was liable for up to $3.5 million in connection with two mortgage loan notes

---

[1] The factual background derives from the Summary Judgment D&O, 2020 WL 5441323, at *1-3, which relied on the parties' filings in connection with TD Bank's initial Motion for summary judgment.

(the "Loans") that Woodbridge Center Realty Partners (the "Borrower") executed in favor of TD Bank. Michael Miller's liability under the Guaranty would be extinguished only when the Borrower's "outstanding principal balance under the Loans is $13,500,000.00 or less[] . . . ." (Guaranty ¶ 30.) The Guaranty also includes a choice-of-law provision, which states, "[t]his Guaranty and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey." (Id. ¶ 24.)

Michael Miller died on December 17, 2016, and Barbara Miller, his widow, serves as the executrix of Michael Miller's estate. As of October 18, 2018, the outstanding principal balance on the Loans was $15,638,247.30. TD Bank received approximately $10 million in net sale proceeds after the Borrower's property was sold at a mortgage foreclosure sale. According to TD Bank's calculations, Michael Miller owed TD Bank $1,847,304.63 under the Guaranty as of the date on which TD Bank commenced this action. This calculation does not take into consideration the foreclosure proceeds. Miller objected to TD Bank's failure to include the foreclosure proceeds as part of the calculation in reducing Michael Miller's liability.

As executrix, Barbara Miller filed a United States Estate Tax Return (the "Estate Tax Return") in March 2018. According to the Estate Tax Return, the assets of Michael Miller's estate total $12,209,765 while debts total $15,665,461. The Estate Tax Return also lists three bank accounts (the "UBS Accounts" or "Accounts") at UBS Financial Services Inc. ("UBS"), which are at issue at this procedural posture. The Accounts are jointly owned by Michael Miller and Barbara Miller, and collectively hold $20,520,433. Though Michael Miller earned the funds in the Accounts during his life, upon his death, the UBS Accounts transferred to Barbara Miller outside of the estate because she was a joint owner. Though Miller argues the funds in the Accounts were needed to satisfy an outstanding loan to UBS (the "UBS Loan"), at the time of Michael Miller's death, the UBS Accounts held over $3.4 million in excess of the amount required to satisfy the UBS Loan.[2]

In the Summary Judgment D&O, the Court held that pursuant to the Guaranty's terms, foreclosure proceeds do not reduce or extinguish Michael Miller's liability, and accordingly, creditors, after a foreclosure sale, can pursue guarantors to

---

[2] As of December 30, 2016, the UBS Accounts collectively held $20,482,689.70, while the UBS Loan had a balance of $17,004,619.18, leaving an excess of $3,478,070.52 in the UBS Accounts.

recover up to the full amount of the debt. See 2020 WL 5441323, at *7. The Court also held that pursuant to New Jersey law, specifically Section 16I-7, TD Bank was entitled to reach into the joint UBS Accounts to satisfy the claim under the Guaranty (the "Guaranty Claim"). See id. at *12.

B.   PROCEDURAL HISTORY

TD Bank initiated this action on November 14, 2018. Miller filed an Answer to the Amended Complaint (see "Amended Complaint," Dkt. No. 16) on June 14, 2019. (See "Answer," Dkt. No. 18.) TD Bank then filed a motion for summary judgment on Count One of the Amended Complaint, seeking a declaratory judgment setting forth the amount to which TD Bank is entitled under the Guaranty, setting aside transfers of property as necessary to satisfy the amount TD Bank is owed under the Guaranty, and authorizing TD Bank to attach or levy certain property to satisfy the amount due. (See "Motion," Dkt. No. 24.) Miller filed her opposition, and TD Bank filed a reply. On September 9, 2022, the Court granted TD Bank's Motion, in part. See Summary Judgment D&O, 2020 WL 5441323, at *12-13.

Miller appealed, and on February 18, 2022, the Second Circuit remanded the case, directing the Court to reconsider or consider in the first instance "(1) whether Section 16I-7 applies to resolve TD Bank's summary judgment motion, after giving both sides notice of and opportunity to respond to

this possible legal basis for its decision; (2) if the District Court concludes that Section 16I-7 does not apply, whether another New Jersey statute, New Jersey common law, or New York law applies; and (3) any motion by either party to supplement the record." TD Bank, N.A. v. Miller, Nos. 20-3255, 20-4100, 2022 WL 500447, at *2 (2d Cir. Feb. 18, 2022) (summary order) ("Remand Order").

On March 7, 2022, the Court received letters from both parties addressing the three issues on remand. (See "Miller Remand Letter," Dkt. No. 59; "TD Bank Remand Letter," Dkt. No. 60.) Miller also requested a stay of the judgment pending a decision on remand, which the Court denied on April 12, 2022. (See "Stay Order," Dkt. No. 65.) In that same order, the Court directed the parties to file any motions to supplement the record, which Miller did on April 19, 2022. (See "Motion to Supplement the Record," Dkt. No. 67.)

On August 4, 2022, the Court issued a Decision and Order denying Miller's Motion to Supplement the Record and ordering the parties to brief the remaining issues on remand. (See Dkt. No. 70.) The Court also directed the parties to submit a briefing schedule on the issues on remand, which the Court subsequently adopted. TD Bank filed its brief on the remaining issues, which the Court construes as its Second Motion for summary judgment. (See "Remand Brief," Dkt. No. 74.) Miller

filed her opposition (see "Opposition" or "Opp.," Dkt. No. 75), and TD Bank filed a reply (see "Reply," Dkt. No. 76). With approval from the Court, Miller filed a sur-reply. (See "Sur-Reply," Dkt. No. 77.)

## II. **LEGAL STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding the motion, a court's role "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried . . . ." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. See Celotex, 477 U.S. at 323; Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). Once the moving party satisfies its burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial" to survive the motion. Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 98–99 (2d Cir. 2003) (citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not

7

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986) (emphasis in original). A factual dispute is material if it "might affect the outcome of the suit," and it is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> at 248.

In determining whether the moving party is entitled to judgment as a matter of law, the court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." <u>Major League Baseball Props., Inc. v. Salvino, Inc.</u>, 542 F.3d 290, 309 (2d Cir. 2008). Though a party opposing summary judgment may not "rely on mere conclusory allegations nor speculation," <u>D'Amico v. City of N.Y.</u>, 132 F.3d 145, 149 (2d Cir. 1998), summary judgment is improper if any evidence in the record allows a reasonable inference to be drawn in favor of the opposing party. <u>See</u> <u>Gummo v. Vill. of Depew, N.Y.</u>, 75 F.3d 98, 107 (2d Cir. 1996).

### III. <u>DISCUSSION</u>

TD Bank's Second Motion for summary judgment seeks to collect certain amounts due under the Guaranty from the UBS Accounts, which had been owned jointly by Barbara Miller and her late-husband, Michael Miller. After appeal, the Second

Circuit remanded the instant case with the limited mandate detailed above. See Remand Order, 2022 WL 500447, at *2.

As the Court has already considered and denied Miller's Motion to Supplement the Record (see Dkt. No. 70), the Court now resolves the remaining two issues identified in the Second Circuit's mandate.

A.   ABSTENTION

As a threshold matter, the Court addresses Miller's abstention argument. Barbara Miller argues in her Opposition that the Court should abstain from considering this case and instead the Surrogate's Court of New York, New York County should resolve this matter. (See Opp. at 7.) While Miller noted in her original opposition to TD Bank's first Motion for summary judgment that "the Bank should be required to exhaust its rights and claims against [Michael Miller's] Estate" before pursuing claims against Miller, Miller noted this point only in the Preliminary Statement section of her brief and did not expand upon this argument nor did TD Bank address it. (See Dkt. No. 26 at 1.) Now on remand, Miller raises the argument that the Court should abstain as there is a parallel state court proceeding addressing the present issues. In its Reply, TD Bank does not provide any argument in response to Miller's request that the Court abstain from the matter.

At this juncture, the Court finds that it is improper to consider Miller's argument for abstention as her request that the Court abstain exceeds the scope of the Second Circuit's limited mandate on remand. See Remand Order, 2022 WL 500447, at *2. Thus, the Court declines to address this issue and retains jurisdiction to resolve the remaining claims.

B.    CHOICE-OF-LAW PROVISION

The Court next addresses TD Bank's argument that the Court erred in applying New Jersey law, which goes to the second issue in the remand mandate. On remand, TD Bank maintains its argument from its initial Motion for summary judgment that New York law applies to the action here. TD Bank argues that the Guaranty's choice-of-law clause, which provides that New Jersey law will govern the parties' rights and obligations, does not apply to the collection of the debt resulting from the Guaranty Claim because such a claim is distinct from the contract claim upon which the debt arises. In revisiting the choice-of-law argument, the Court maintains that New Jersey law, as provided in the Guaranty, applies to the action.

As the Court previously discussed in its Summary Judgment D&O, "a federal court sitting in diversity must generally apply the choice-of-law rules of the state in which it sits." In re Coudert Bros. LLP, 673 F.3d 180, 186 (2d Cir.

10

2012). Thus, New York's choice-of-law principles apply in this matter. In a New York choice-of-law analysis, the Court must first determine "whether there is an actual conflict of laws." Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998). Such a conflict exists where "the applicable law from each jurisdiction provides different substantive rules," such that those differences "must have a significant *possible* effect on the outcome . . . ." Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., 414 F.3d 325, 331 (2d Cir. 2005) (emphasis in original) (internal quotation marks and citations omitted).

In the Summary Judgment D&O, the Court had determined in its choice-of-law analysis that it was appropriate to consider the choice-of-law provision contained in the Guaranty. The provision specifically provides that:

> This Guaranty and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and *enforced in accordance with*, the law of the State of New Jersey.

(Guaranty ¶ 24 (emphasis added).) "Under New York law, courts will generally enforce choice-of-law clauses, because contracts should be interpreted so as to effectuate the parties' intent[.]" AEI Life LLC v. Lincoln Benefit Life Co., 892 F.3d 126, 132 (2d Cir. 2018) (internal quotation marks and citations omitted); see also Marine Midland Bank, N.A. v. United Missouri Bank, N.A., 643 N.Y.S.2d 528, 530 (App. Div.

1st Dep't 1996) ("As a general rule, choice of law provisions
. . . are valid and enforceable in [New York].").

In its Remand Brief, TD Bank objects to the Court's
determination that the Guaranty's choice-of-law provision
covered the collection claim. While Miller argues that TD
Bank's collection claim falls squarely within the scope of
the choice-of-law clause, TD Bank contends that it does not.
When determining the *scope* of a contractual choice-of-law
provision, a federal court in New York "sitting in diversity[]
[i]s bound to apply New York law . . . ." Fin. One Pub. Co.
Ltd., 414 F.3d at 333 (noting that courts in the Second
Circuit "determine a choice-of-law clause's scope under the
same law that governs the clause's validity -- the law of the
forum").

In its prior decision, the Court determined that whether
TD Bank can reach the funds of the Millers's joint UBS
Accounts directly pertains to its ability to enforce its right
to payment. As the choice-of-law provision in the Guaranty
expressly provides that New Jersey law shall govern
enforcement of the Guaranty, the provision applies to TD
Bank's collection claim.

In its Remand Brief, TD Bank renews its argument that
the Guaranty's choice-of-law clause does not extend to the
collection claim because it is a non-contract claim, and the

provision is limited to contract claims. The Court does not find this argument persuasive.

To support its argument, TD Bank asserts that the Second Circuit has recognized that collection claims are distinct from claims that establish liability under a contract. Relying on FCS Advisors, Inc. v. Fair Finance Company, Inc., 605 F.3d 144 (2d Cir. 2010), TD Bank contends that a debt created by contract merges into the judgment entered on the contract, and thus a contractual choice-of-law provision would no longer govern the judgment debt. That, in essence, "the original claim loses its character and identity and is merged in the judgment." (See Remand Brief at 4 (quoting FCS Advisors, 605 F.3d at 148).)

The Court is not persuaded by TD Bank's argument that FCS Advisors proscribes application of the Guaranty's choice-of-law provision to the collection of the judgment debt. In FCS Advisors, a district court applied New York law to determine the post-judgment interest rate based on a choice-of-law provision in the governing contract, a letter of intent ("LOI") pertaining to a financial transaction. See id. at 145-46. The LOI's choice-of-law clause specifically provided that the contract "shall be governed by and construed in accordance with the laws of the State of New York." Id. at 146 n.3. The Second Circuit held that the district court erred

13

in applying New York law, instead of the federal rate, to the
post-judgment interest because the general choice-of-law
provision was deemed "insufficient to demonstrate an intent
to apply New York law to the calculation of post-judgment
interest." Id. at 148. The court further noted that if the
parties wished for a different post-judgment interest rate to
apply, the language in the contract must be "clear,
unambiguous and unequivocal." Id. (internal quotation marks
omitted) (quoting Westinghouse Credit Corp. v. D'Urso, 371
F.3d 96, 100 (2d Cir. 2004)).

Though TD Bank cites FCS Advisors to argue that the
choice-of-law provision in the Guaranty is insufficient to
convey an intent to encompass the collection of a judgment
debt, the Court does not find that FCS Advisors supports that
argument. The Second Circuit in FCS Advisors was quite
particular in its discussion as it related to post-judgment
interest rates. While the Court does not dispute that a debt
may merge into the judgment upon entry of that judgment, the
Court finds that the Second Circuit's requirement that a
choice-of-law provision be "clear, unambiguous and
unequivocal" was specific to those instances in which parties
sought to apply a post-judgment interest rate different from
the firmly established federal statutory rate. Id. at 148-
49. At no point in its discussion did the FCS Advisors court

14

expand this specificity requirement to all matters related to the contract or the merger of the debt. Indeed, even in Westinghouse Credit Corporation v. D'Urso, cited in FCS Advisors, the Second Circuit's requirement that the parties' intent be expressed in "clear, unambiguous and unequivocal" language specifically pertained to post-judgment interest rates. 371 F.3d at 102 ("If parties want to override the general rule on merger and specify a post-judgment interest rate, they must express such intent through 'clear, unambiguous and unequivocal' language."); see also Banque Nationale De Paris v. 1567 Broadway Ownership Assocs., 669 N.Y.S.2d 568, 569 (App. Div. 1st Dep't 1998) (applying federal statutory rate to post-judgment interest because loan documents did not include "clear, unambiguous and unequivocal expression" that a different rate would be imposed).

Also, FCS Advisors is factually distinct because the choice-of-law provision there was general yet narrow as it merely provided that the LOI would be "governed by and construed in accordance with" New York law. Id. at 146 n.3. The Guaranty, on the other hand, is more expansive and provides that the Guaranty *and* the parties' rights and obligations would be "governed by, and construed and *enforced* in accordance with" New Jersey law. (Guaranty ¶ 24 (emphasis added).) As the Court discusses below, a claim to collect a

15

debt clearly falls within the bounds of enforcing the Guaranty and the parties' obligations. Thus, the Court finds that FCS Advisors is readily distinguishable, and TD Bank's contention that the Guaranty's choice-of-law provision does not apply because the debt has now merged into the judgment lacks merit.

TD Bank's reliance on Drenis v. Haligiannis is also unavailing. See 452 F. Supp. 2d 418 (S.D.N.Y. 2006). TD Bank cites Drenis for the proposition that a claim to collect the debt, while it "clearly bear[s] a relationship to transactions made under the terms of the [Guaranty]," is incidental to the contract, and therefore the choice-of-law provision in the Guaranty does not apply to the collection claim. (See Remand Brief at 4 (quoting Drenis, 452 F. Supp. 2d at 426).) The Court does not agree.

In Drenis, the district court determined that a choice-of-law provision did not apply to a fraudulent transfer claim as that claim did not arise from but was rather "incidental" to a contract claim. 452 F. Supp. 2d at 426. The Court is puzzled by TD Bank's attempt to distinguish the collection of a debt as something separate and apart from the contract under which the debt is owed. A claim to collect an amount due under the Guaranty, unlike a fraudulent conveyance claim, clearly sounds in contract, not in tort or otherwise. Moreover, a collection claim -- specifically TD Bank's right, ability,

16

and means to collect a debt owed pursuant to the Guaranty --
is not merely incidental to the contract, but is integrally
linked to the contract itself, as a claim to collect
essentially effectuates the performance of Michael Miller's
obligations under the Guaranty. The logical and immediate
next step after determining liability is determining how to
enforce the Guaranty, namely the mechanism by which a debt
owed under the Guaranty can be collected. To sever the
collection claim from Michael Miller's liability under the
Guaranty is unreasonable, and TD Bank's attempt to argue
otherwise is wholly unavailing. Accordingly, the Court
maintains its previous holding that TD Bank's collection
claim is properly within the bounds of the Guaranty's choice-
of-law provision.

The Court also finds TD Bank's attempt to distinguish
Marine Midland, 643 N.Y.S.2d 528, unpersuasive. (See Remand
Brief at 5-6.) In its Summary Judgment D&O, the Court cited
Marine Midland because the case concerned a similar choice-
of-law provision that stipulated that a particular
jurisdiction's law should govern the enforcement of a
promissory note. See Summary Judgment D&O, 2020 WL 5441323,
at *11. And the court in Marine Midland held that enforcement
of the promissory note fell within the bounds of the choice-
of-law provision. See 643 N.Y.S.2d at 531.

TD Bank contends that Marine Midland is inapposite because the case concerned the scope of the law that applied to a contract-based claim, specifically that the claims would be enforced pursuant to New York law meant that the procedural law of New York would apply. (See Remand Brief at 5.) According to the Bank, the phrase, "enforced in accordance with," in the Guaranty here does not encompass the means for collecting on the Guaranty, but rather pertains to the application of New Jersey procedural law for determining contract-based claims. (See id.)

However, the choice-of-law provision at issue specifically states that both the Guaranty and "the *rights and obligations* of the parties" thereunder shall be "governed by, and construed and enforced in accordance with" New Jersey law. (Guaranty at ¶ 24 (emphasis added).) As the Court explained above, the collection claim sounds in contract as it is sufficiently tied to the Guaranty as well as to the rights and obligations of the parties under the contract. Further, at the initial summary judgment stage, the Court observed that the Marine Midland court determined that an issue pertaining to the noteholder's ability to collect pursuant to a note was governed by the choice-of-law provision, see 643 N.Y.S.2d at 531, as is the case at issue here.

The Court also finds unpersuasive TD Bank's argument that the relevant law is the law of the situs of the specific property from which a creditor seeks to collect. (See Remand Brief at 5-6.) To support that proposition, TD Bank cites James v. Powell, 225 N.E.2d 741 (N.Y. 1967), which the Court finds distinguishable from the facts here in dispute. Powell pertained to a judgment creditor's ability to collect from specific property after a libel judgment was entered. See id. at 743. Powell does not address how the calculus changes when a contractual choice-of-law provision is involved, such as the one here. See generally id.

TD Bank thus fails to cite any case that considers the collection of an underlying debt as entirely distinct from enforcement of a guaranty, that would require another jurisdiction's laws to govern the collection of that debt. Accordingly, the Court is persuaded that a collection claim clearly arises from the Guaranty, and sees no reason to disturb its earlier holding that New Jersey law, as provided by the Guaranty's choice-of-law provision, applies to the collection claim here.

C.   NEW JERSEY LAW

Having established that New York law does not apply to the collection claim, the Court now turns to New Jersey law as provided in the choice-of-law provision of the Guaranty.

In the <u>Summary Judgment D&O</u>, the Court held that under Section 16I-7 of the Multiple-Party Deposit Account Act (the "MPDAA"), N.J. Stat. Ann. §§ 17:16I-1, *et seq.*, "TD Bank can reach up to the full value of the joint account at the time of Michael Miller's death." 2020 WL 5441323, at *12.

On remand, TD Bank argues in its opening brief that if New Jersey law applies, New Jersey common law and Section 16I-7 both allow the Bank to collect from the UBS Accounts. However, in its Reply, TD Bank abandons the argument that the MPDAA applies at all, and instead asserts a new argument that only the Uniform Transfer on Death Security Registration Act (the "TOD"), N.J. Stat. Ann. §§ 3B:30-1, *et seq.*, which governs security accounts, applies to the UBS Accounts. TD Bank argues that the TOD, paired with New Jersey common law, entitles it to collect from the UBS Accounts to satisfy the claim under the Guaranty.[3]

Miller argues that Section 16I-5, not Section 16I-7, of the MPDAA applies to the UBS Accounts, and that under Section 16I-5, TD Bank may not collect from the Accounts. The Court now addresses the applicability of New Jersey common law, Sections 16I-7 and 16I-5 of the MPDAA, and the TOD to resolve

---

[3] Though TD Bank raises the TOD argument for the first time in its Reply, the Court granted Miller's request to file a sur-reply to respond to TD Bank's new argument and thus considers TD Bank's TOD-related arguments. (<u>See</u> Dkt. No. 79.)

this motion. Upon reconsideration, the Court finds that under New Jersey law, TD Bank is not entitled to collect from the UBS Accounts to satisfy its Guaranty Claim, and denies TD Bank's Second Motion for summary judgment on the remaining issues on remand.

    1.   New Jersey Common Law

    TD Bank asserts that if New Jersey law applies, then under New Jersey common law, creditors like TD Bank can reach joint accounts held by debtors and non-debtors. The Court finds that the cases relied upon by TD Bank are not on point. TD Bank first cites <u>Banc of America Leasing and Capital, LLC v. Fletcher-Thompson, Inc.</u>, for the proposition that joint accounts held by both a judgment debtor and non-debtor are reachable under New Jersey common law. <u>See</u> 179 A.3d 1058, 1060 (N.J. Super. Ct. App. Div. 2018). However, <u>Banc of America</u>, which requires that a judgment creditor "prove that the moneys . . . deposited are the individual property of the judgment debtor," does not speak to whether the death of a joint account holder changes the ability of a judgment creditor to reach into the account. <u>Id.</u> (internal quotation marks omitted) (quoting <u>Esposito v. Palovick</u>, 101 A.2d 568, 572 (N.J. Sup. Ct. App. Div. 1953)). Thus, this case is inapposite.

TD Bank next relies on Esposito v. Palovick to argue that creditors may reach the funds of a joint account held in the name of a married couple in order to collect a judgment against the debtor spouse. See 101 A.2d at 569-70. In Esposito, the funds in the joint account were deposited almost entirely by the husband, and none of the funds were contributed by the debtor wife. See id. at 569. The Appellate Division of the New Jersey Superior Court held that the debtor wife contributed no part of the funds in the joint account, and the lower court therefore did not err in vacating the levy made upon the joint bank account by the creditor of the wife because the funds in the bank account were not the wife's property. See id. at 571-72.

TD Bank seems to rely on Esposito[4] for the inference that had the funds in the joint account been contributed by the debtor wife, then the bank would have been permitted to reach into the account to satisfy the debt. Nevertheless, the Court not only finds TD Bank's reliance on Esposito unremarkable

---

[4] The Court notes that TD Bank's parenthetical citation for Esposito is incorrect. (See Remand Brief at 8.) The parenthetical states, "creditor permitted to reach funds in joint account of husband and wife where wife had no income, did not contribute to the account and the moneys deposited were from income earned by the husband" (id.), when in fact, the court held that the creditor was not allowed to reach the funds in the joint account because the debtor was the wife and the wife had contributed no funds to the account. See Esposito, 101 A.2d at 572.

but also finds that the case tends to support Miller's position.

As Miller asserts, Esposito is not applicable as it concerned whether a creditor could reach the funds in a joint account held in the name of a husband and wife "during the lifetime of both joint tenants" -- while they are still alive. Id. at 570. Though the facts there are distinguishable from the facts in the instant matter, the Esposito court does provide some guidance as to whether a creditor can reach into a joint account upon the death of one of the account holders. See id. at 571-72. In Esposito, the court cites New Jersey Title Guaranty & Trust Co. v. Archibald, 108 A. 434 (N.J. 1919), a New Jersey Court of Errors and Appeals case involving a dispute between an executor and a surviving joint tenant. See 101 A.2d at 571-72. In Archibald, a mother and a daughter were owners of a joint bank account. See 108 A. at 434. Upon the mother's death, the executor of the mother's estate sought to reach into the joint account on the ground that because the mother made all the deposits into the account during her lifetime, the funds belonged to the mother. See id. However, the court disagreed and held that regardless of whether the decedent deposited all or some of the funds into the joint account, upon her death, the funds belonged solely to the surviving joint tenant, the daughter, and the executor was

23

therefore not entitled to that money. See id. at 434-35. The
Esposito court, while distinguishing Archibald, noted that
"[t]he [Archibald] court properly ruled that upon the death
of one joint tenant, the undrawn moneys belong to the
survivor, regardless of how the fund was created." Esposito,
101 A.2d at 572.

Esposito then answers in the affirmative the question of
whether the law of survivorship converts the funds within a
joint account into the sole property of the surviving account
holder even though the survivor did not contribute any funds
to the account during the decedent's lifetime. And for that
reason, Esposito strongly undermines TD Bank's argument that
it is entitled to reach into the joint UBS Accounts after
Michael Miller's death to satisfy the Guaranty Claim.

TD Bank last cites In re Estate of Kovalyshyn for the
proposition that in New Jersey, where a decedent's estate is
insolvent, creditors of that decedent may reach non-probate
assets to satisfy creditor claims. See 343 A.2d 852 (Hudson
County Ct. 1975). Though Kovalyshyn is helpful, it still fails
to provide definitive guidance in the instant case.

In Kovalyshyn, the creditor was the executrix of the
decedent's estate and had been named the residuary
beneficiary of an inter vivos trust created by the decedent.
See id. at 854. The executrix sought to compel the named

24

beneficiary of the trust to contribute funds from the trust
to satisfy the decedent's debts and estate obligations. See
id. at 858. The Probate Division of the New Jersey County
Court held that the executrix creditor could reach into the
trust to satisfy the decedent's debts. See id. at 858-59. In
reaching this decision, the court considered that the
"decedent did not intend to strip himself of control of or
access to these funds during his lifetime, intending only to
give to the beneficiary what was left, if anything, at his
death." Id. at 859. Essentially, the decedent, if he were
still alive, would have been able to reach into the trust to
pay his outstanding debts. See id. Thus, according to the
court, accepting the beneficiary's argument that creditors
may not reach the trust would be improper because it would
shelter the settlor's assets from satisfying outstanding
debts. See id.

Kovalyshyn, however, is distinguishable. As Miller
observes,[5] the creditor in Kovalyshyn was the executrix of

---

[5] Miller also argues that Kovalyshyn is inapposite because there, the
decedent's estate was insolvent, which Miller contends is in dispute in
the instant case. However, the Court is not persuaded that a genuine
dispute as to the insolvency of Michael Miller's estate exists. While the
moving party bears the initial burden of demonstrating that there is no
genuine dispute of material fact on a summary judgment motion, once that
burden is met, "the burden shifts to the nonmoving party to 'set forth
specific facts showing that there is a genuine issue for trial.'" Mason
Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp., 400 F. Supp.
3d 7, 13 (S.D.N.Y. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986)).

the estate and sought to reach into the trust in order to satisfy the estate's debts, without specifying a particular creditor to whom a debt was owed and who may have priority in being repaid. See id. at 856. Further, the funds at issue belonged to an inter vivos trust, not a joint bank account, and the beneficiary could access the funds in the trust only after the settlor has died. See id. Conversely, joint bank account holders can presumably each reach into the funds of their account during their lifetimes. Thus, TD Bank's reliance on this case is misplaced, and TD Bank has failed to establish that New Jersey common law permits TD Bank to reach the funds in the joint UBS Accounts.

2. New Jersey Statutes

The Court now turns to whether a New Jersey statute resolves TD Bank's Second Motion. In its Summary Judgment

---

The Court determined in its Summary Judgment D&O that there was no dispute that "Michael Miller's estate could not satisfy outstanding debts" based on the Estate Tax Return, which listed the assets of the estate as totaling $12,209,765 (Estate Tax Return at 5, part 5, line 11) and debts totaling $15,665,461 (id., part 5, line 15). Summary Judgment D&O, 2020 WL 5441323, at *10 n.8. However, on remand, Miller asserts that "the tax return is explicit that the value of estate assets is unknown." (Opp. at 4.) Despite Miller's contention that there is a dispute as to the insolvency, Miller fails to provide any citation to the admissible record, other than her unsworn assertion that a genuine dispute exists. Further, Miller admitted in her Local Rule 56.1 Counterstatement that the Estate Tax Return shows that the estate's debts exceed its assets. (See "Miller 56.1 Counterstatement," Dkt. No. 26-1 ¶ 11.) Miller has failed to meet the burden to "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013). Accordingly, there is no dispute that Michael Miller's estate was insolvent for the purpose of resolving the Second Motion following remand.

D&O, the Court determined that under Section 16I-7, "creditors may reach all funds in a decedent's joint bank account that the decedent deposited in the account, or 'owned beneficially' until his death when the decedent's estate is otherwise insufficient to satisfy the outstanding debt." 2020 WL 5441323, at *12. The Court further held that pursuant to the statute, TD Bank could "reach up to the full value of the joint account at the time of Michael Miller's death." Id. After appeal, the Second Circuit remanded this matter to this Court in order to give the parties an opportunity to present arguments specifically on whether Section 16I-7 of the MPDAA applies to TD Bank's ability to collect from the joint UBS Accounts.

Miller argues that the Court erred at the initial summary judgment stage in applying Section 16I-7 to the collection claim and that instead, the appropriate provision that applies to whether TD Bank can collect from the UBS Accounts is Section 16I-5 of the MPDAA. Though TD Bank initially argues in its opening brief on remand that Section 16I-7 applies, it retracts that argument in later briefing. For the first time in its Reply,[6] TD Bank contends that no section of the MPDAA,

---

[6] TD Bank initially argued in its Remand Brief that the Court's reliance and application of Section 16I-7 was correct, but later in its Reply, TD Bank retracted its prior argument and asserts instead that the entire MPDAA, of which Sections 16I-5 and 16I-7 are a part, does not apply here at all. (See Reply at 3 n.4.)

including Section 16I-7, applies to the UBS Accounts because they are brokerage accounts subject to a different statutory regime, the TOD, which governs whether TD Bank can collect from the UBS Accounts. (See Reply at 3 n.4); see N.J. Stat. Ann. §§ 3B:30-1, *et seq.*

Because TD Bank challenges the propriety of applying the MPDAA to brokerage accounts, the Court first examines the definition of "account" under both the MPDAA and the TOD. The MPDAA addresses what happens to certain financial accounts with one or more account holders upon the death of one of the parties. It provides guidance on the right of survivorship and the rights of creditors where the probate estate is not able to pay all debts. Under the MPDAA, "account" is defined as a "contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, share account and other like arrangement." N.J. Stat. Ann. § 17:16I-2(a).

There is no dispute here that the UBS Accounts are joint brokerage accounts, holding investments on behalf of the joint account holders. (See Estate Tax Return at 10-11; "UBS Statements," Dkt. No. 24-11.) TD Bank argues that brokerage or securities accounts are not among the specified accounts over which the MPDAA would apply. While arguably, "other like arrangement," N.J. Stat. Ann. § 17:16I-2(a), leaves open the

possibility that other types of financial accounts such as investment accounts are included, TD Bank argues that the existence of the TOD suggests otherwise.

The TOD "sets forth the method by which the owner of an individual security can identify an individual or individuals who will take the account upon the account owner's death, without the account becoming a probate asset." Quick v. Stanley, No. A-0443-21, 2023 WL 4241644, at *8 (N.J. Super. Ct. App. Div. June 29, 2023). The TOD specifically governs "security accounts." A security account is defined as "a reinvestment account associated with a security, a securities account with a broker, a cash balance in a brokerage account, cash, interest, earnings, or dividends earned or declared on a security in an account, a reinvestment account, or a brokerage account[] . . . ." N.J. Stat. Ann. § 3B:30-2.

Some New Jersey courts have remarked on the difference between the MPDAA and the TOD. For example, the Chancery Division of the New Jersey Superior Court in In re Suraci examined at length the purpose and history of the MPDAA and the TOD, noting that the New Jersey Legislature's adoption of the TOD "clearly implies there is no intention [that] the [MPDAA] apply to securities and brokerage accounts. To interpret the same any other way would render the TOD Act unnecessary and superfluous." No. BER-P-284-09, 2010 WL

29

3218065 (N.J. Super. Ct. Ch. Div. Aug. 9, 2010). The account in question in Suraci was an Ameritrade investment account, and the court observed that "[a]s it appears the [Multiple-Party Deposit Account] Act does not govern securities and brokerage accounts, it therefore is not applicable in the instant matter involving the Ameritrade [investment] account." Id. Notably, however, the court did not actually apply the TOD to the Ameritrade account as the parties did not brief the issue.

Though some New Jersey courts have observed that brokerage accounts would not be subject to the MPDAA, other courts have continued to analyze brokerage accounts under the MPDAA. See, e.g., In re Est. of Balgar, No. A-6621-04T5, 2007 WL 1147081, at *6 (unpublished) (N.J. Super. Ct. App. Div. Apr. 19, 2007) (citing Lebitz-Freeman v. Lebitz, 803 A.2d 156, 158 (N.J. Super. Ct. App. Div. 2002) and noting that the joint brokerage account in Lebitz-Freeman was "not a joint bank account subject to the Multiple-Party Deposit Account Act"); Matter of Tr. of London, No. A-4693-14T4, 2017 WL 3879323, at *12 (N.J. Super. Ct. App. Div. Sept. 6, 2017) (unpublished) (declining to decide whether the MPDAA applies to brokerage account but noting that the TOD likely applies to brokerage account and reaching same result under either statute); but see In re Jones, No A-2557-16T2, 2018 WL

30

4471686, at *4 (N.J. Sup. Ct. App. Div. Sept. 19, 2018)
(unpublished) (applying the MPDAA to a joint investment
account and finding that the plaintiff did not establish by
clear and convincing evidence that the decedent "did not
intend to establish a joint account giving defendant a right
of survivorship" pursuant to the MPDAA).[7]

While there is no decision from the highest state court
that directly addresses the issue, TD Bank does not cite any
case that actually renders a decision after applying the TOD
to a joint brokerage account, as opposed to only providing
commentary and analysis on the propriety of applying the TOD
to such accounts.

Moreover, the Court finds that even if it were to apply
the TOD to the UBS Accounts, the TOD is not exactly on point.
TD Bank contends that under Section 10 of the TOD, "upon the
death of a joint account owner, the transfer of the interest
in the account to the beneficiary is 'not testamentary.'"

---

[7] The Court notes that the cited cases are unpublished opinions from the
Appellate Division of the New Jersey Superior Court, and New Jersey local
rules specifically state that "[n]o unpublished opinion shall constitute
precedent or be binding upon any court." N.J. Prac. R. 1:36-3. However,
federal courts may still consider such decisions as persuasive authority
when analyzing state law. See Ekstein v. Polito Assocs. LLC, No. 20 Civ.
1878, 2022 WL 783000, at *6 n.4 (S.D.N.Y. Mar. 15, 2022) (citing Kerrigan
v. Otsuka Am. Pharm., Inc., 560 F. App'x 162, 165 n.4 (3d Cir. 2014)
(summary order) and In re Rezulin Prod. Liab. Litig., 390 F. Supp. 2d 319,
342 n.119 (S.D.N.Y. 2005)); Kerrigan, 560 F. App'x at 166 ("While we are
not bound by unpublished state court decisions, we may look to them as
persuasive authority when ascertaining state law." (citation omitted)).

(Reply at 2 (quoting N.J. Stat. Ann. § 3B:30-10(a)).) TD Bank further remarks that Section 10(b) provides that "[t]his act does not limit the rights of creditors of security owners against beneficiaries and other transferees under other laws of this State." N.J. Stat. Ann. § 3B:30-10(b). According to TD Bank, based on the statute, upon an account owner's death, the assets in the joint investment account do not become part of the probate estate, and therefore, individual creditors like TD Bank may satisfy their claims from assets in the possession of transferees like Barbara Miller.

The Court finds that application of the TOD here is premature. Contrary to TD Bank's contention, the TOD establishes what will happen to a security account upon the death of *all* owners of the account, not just one of several owners. For example, it specifically contemplates that a sole owner or multiple joint owners of a security account will register the account in beneficiary form, i.e., that the owner or owners will "designat[e] . . . a beneficiary to take the ownership at the death of the owner or the death of multiple owners." N.J. Stat. Ann. § 3B:30-5. Section 8 of the TOD states that upon the "death of the sole owner or *the last to die of all multiple owners*, ownership of securities registered in beneficiary form passes to the beneficiary or

32

beneficiaries who survive all owners." Id. § 3B:30-8 (emphasis added).

The plain language of the TOD makes clear that it specifically pertains to the transfer of security accounts after *all owners* of the account have died and a beneficiary has been so designated. It does not contemplate what happens to such an account when only one of several joint owners dies, i.e., *before* the passage of ownership to a beneficiary has actually been triggered.

Here, the UBS Accounts had multiple owners, Michael Miller and Barbara Miller. Barbara Miller was neither a beneficiary nor a transferee, as TD Bank argues, but a surviving joint *owner* of the UBS Accounts, and whose death, as the remaining survivor, would be required to trigger the provisions of the TOD. Moreover, the TOD does not impart substantive rights onto creditors beyond providing that the TOD does not hamper their rights if conferred by other New Jersey law. See id. TD Bank argues that armed with the TOD, it may satisfy the Guaranty Claim by reaching the UBS Accounts because New Jersey common law so allows. (See Reply at 3.) However, as the Court explained above, the New Jersey cases relied upon by TD Bank are not on point.

Having determined that the TOD does not apply here, the Court now turns to Sections 16I-7 and 16I-5 of the MPDAA.

Though some New Jersey courts have expressed doubt as to whether the MPDAA applies to joint brokerage accounts, the Court finds persuasive that some New Jersey appellate courts have analyzed joint investment accounts under the MPDAA, and the Court will do so here.

Section 16I-7 of the MPDAA, titled "Rights of creditors," states, in relevant part, that:

> No multiple-party account will be effective against an estate of a deceased party to transfer to a survivor sums needed to pay debts, taxes, and expenses of administration, if other assets of the estate are insufficient. A surviving party, P.O.D. payee, or beneficiary who receives payment from a multiple-party account after the death of a deceased party *shall be liable to account to his personal representative* for amounts the decedent owned beneficially immediately before his death to the extent necessary to discharge the claims and charges mentioned above remaining unpaid after application of the decedent's estate. No proceeding to assert this liability shall be commenced *unless the personal representative has received a written demand by a creditor*, and no proceeding shall be commenced later than 2 years following the death of the decedent. Sums recovered by the personal representative shall be administered *as part of the decedent's estate.*

N.J. Stat. Ann. § 17:16I-7 (emphases added). Miller argues that Section 16I-7 is inapplicable because TD Bank has failed to satisfy the elements set forth in detail under that section. First, the plain language of Section 16I-7 makes clear that the personal representative of the decedent's estate may invoke the statute. See id.; (see Opp. at 3.) As Miller argues, and the Court agrees, the record does not show

that the personal representative, which includes executors
like Miller, invoked the statute.

Second, a proceeding to assert liability under Section
16I-7 can only "be commenced [where] the personal
representative has received a written demand by a creditor."
N.J. Stat. Ann. § 17:16I-7. Again, there is no evidence that
the creditor, TD Bank, made a written demand to Miller in her
capacity as executrix that would thereby trigger a proceeding
to assert liability under this section of the MPDAA.

Third, the statute states that any "[s]ums recovered by
the personal representative shall be administered as part of
the decedent's estate." Id. Here, no party has expressed that
the sums recovered would be for the benefit of and
administered as part of Michael Miller's estate. In fact,
this action contemplates that any recovered amounts would be
administered to the individual creditor, TD Bank, and not to
the estate itself. Thus, as Barbara Miller contends, TD Bank
may not rely on Section 16I-7 because it failed to take the
required steps to seek protection from the statute.
Accordingly, the Court is persuaded that upon
reconsideration, Section 16I-7 does not apply to TD Bank's
collection claim and, either way, would not grant TD Bank the
relief they seek.

Miller instead argues that the applicable statute is Section 16I-5 of the MPDAA, and that under that section, TD Bank would not be authorized to satisfy the Guaranty Claim from the joint UBS Accounts. See id. § 17:16I-5.

Section 16I-5 provides that "sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is *clear and convincing evidence* of a different intention at the time the account is created." Id. (emphasis added). "Clear and convincing evidence 'should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" Est. of Ostlund v. Ostlund, 918 A.2d 649, 655 (N.J. Super. Ct. App. Div. 2007) (quoting In re Purrazzella, 633 A.2d 507, 514 (1993)).

Miller argues that TD Bank has not demonstrated through clear and convincing evidence that at the time the Accounts were created, Michael Miller did not intend for the remaining sums on deposit to pass to the surviving party. (See Opp. at 7.) The Court agrees that TD Bank has failed to present any argument or put forth evidence establishing a different intent that is "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in

36

issue." <u>In re Seaman</u>, 627 A.2d 106, 110 (N.J. 1993)
(alterations in original) (internal quotation marks and
citation omitted). Thus, when applying Section 16I-5, it is
evident that TD Bank has not met its burden of demonstrating
that it is entitled to reach into the UBS Accounts to satisfy
the debt.

Accordingly, under the TOD or the MPDAA, the Court finds
that TD Bank has not established that it is entitled to
satisfy its claim under the Guaranty from the joint UBS
Accounts. TD Bank's Second Motion for summary judgment on
Count One is **DENIED**, and the Court **VACATES**, in part, its
previous Decision and Order, dated September 9, 2020. (<u>See</u>
Dkt. No. 38 at 36-37); <u>see</u> <u>Summary Judgment D&O</u>, 2020 WL
5441323, at *12-13.

## IV. <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion (<u>see</u> Dkt. No. 74) of plaintiff
TD Bank, N.A. ("TD Bank") for summary judgment on Count One
of the Amended Complaint against defendant Barbara Miller
("Barbara Miller") pursuant to Rule 56(a) of the Federal Rule
of Civil Procedure is **DENIED**; and it is further

**ORDERED** that the Decision and Order entered by this Court
on September 9, 2020 (<u>see</u> Dkt. No. 38) is **VACATED**, in part.
The Court specifically **VACATES**: (1) the order granting "TD

Bank's request for a declaratory judgment that defendant Barbara Miller received funds from joint bank accounts previously held in the name of Barbara Miller and Michael Miller at UBS Financial Services, Inc. ('UBS') with account numbers ending in -934, -904, and -905 (collectively, the 'UBS Accounts') subject to TD Bank's claim under the Guaranty of Payment (the 'Guaranty Claim')" (id. at 36); (2) the order setting aside "the transfer of Michael Miller's interest in $3,478,070.52 in the UBS Accounts to Defendant Barbara Miller . . . to satisfy the Guaranty Claim" (id. at 37); and (3) the order permitting TD Bank "to attach or levy upon Barbara Miller's bank accounts held at UBS, or any other bank account or property in which Barbara Miller has an interest, in order to satisfy this judgment" (id.).

The Clerk of Court is respectfully directed to terminate any pending motions.

**SO ORDERED.**

Dated:     29 August 2023
           New York, New York

                                              _____
                                              Victor Marrero
                                              U.S.D.J.